UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HAIDER SALAH ABDULRAZZAK,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS KAEMINGK, AARON MILLER, SD. BD OF PARDONS AND PAROLES, DOUG CLARK, ROBERT DOOLEY, SUSAN JACOBS, KIM LIPINCOTT, J.C. SMITH, DUSTI WERNER, DAKOTA PSYCHOLOGICAL SERVICES LLC., JUSHUA J. KAUFMAN, JOHN DOE 1, JOHN DOE 2, JANE DOE,<br><br>Defendants. | 4:17-CV-04058-KES<br><br><br><br>ORDER GRANTING MOTION TO AMEND, DENYING MOTION TO APPOINT COUNSEL, DISMISSING AMENDED COMPLAINT IN PART, AND DIRECTING SERVICE |

**INTRODUCTION**

Plaintiff, Haider Salah Abdulrazzak, is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. He filed a pro se civil rights lawsuit under 42 U.S.C. § 1983, Docket 1, and now moves to amend his complaint and moves the court to appoint him counsel. Docket 10; Docket 11. The court grants Abdulrazzak's motion and screens his amended complaint under 28 U.S.C. § 1915A. For the reasons stated below, the court dismisses Abdulrazzak's amended complaint in part and directs service in part.

## FACTUAL BACKGROUND

Abdulrazzak was paroled on June 25, 2014. Docket 10-1 at 7. While on parole, Abdulrazzak temporarily settled his civil case concerning immigration. *Id.* After this settlement, on April 20, 2016, Dusti Werner, Abdulrazzak's parole agent, told him she was adding more restrictions to his original parole agreement, even though he had not committed a new offense or violated his parole. *Id.*

Under the new restrictions, Abdulrazzak was required to go through sex offender treatment and admit guilt (it appears through a polygraph test) to his original convictions. *Id.* at 4, 7. Abdulrazzak alleges that these restrictions are not applied to U.S. citizens. *Id.* at 4. Abdulrazzak alleges that defendants did not discuss these requirements with him before he was paroled, even though they discussed them with other parolees who were U.S. citizens. *Id.* at 6.

Abdulrazzak told his parole agent he would not admit guilt because his admission could be used against him to support his conviction or bring new charges, including perjury. *Id.* at 7. Werner told Abdulrazzak that his parole would be revoked if he did not admit his guilt. *Id.* at 4. Abdulrazzak alleges that defendants tried to coerce him into admitting his guilt by denying him entry into a treatment program for Post-Traumatic Stress Disorder (PTSD), refusing to let him do laundry in the summer, keeping his GPS monitor on after he passed two polygraph tests, charging him for services on parole, and sending that bill to a collection agency. *Id.* at 7, 13.

During this time, Abdulrazzak also alleges that defendants kept him from accessing the courts. *Id.* at 15. He alleges that defendants denied him access to the prison law library, paper, the internet, and email, so he could not work on his immigration case or his habeas case. *Id.* They also would not let him access his documents, though he states that Werner offered to let him print them on her printer, and he refused. *Id.* at 18. Abdulrazzak missed the deadline for filing an appeal because of these denials. *Id.* at 15.

Eventually, Abdulrazzak alleges that correctional officers took the flash drive on which he stored his legal documents. *Id.* at 18. Unknown correctional officers routinely inspected the lockers where Abdulrazzak's flash drive was stored, and they were the only people with access to the lockers. *Id.* at 19. Abdulrazzak alleges that there were more valuable items in his locker that were not taken. *Id.* at 20.

On November 2, 2016, Werner filed an allegation of a parole violation against Abdulrazzak. *Id.* at 19. Because of this alleged violation, Abdulrazzak was incarcerated in the Jameson Annex for 30 days. *Id.* On November 15, 2016, a hearing was held concerning this allegation, and Abdulrazzak was told that he had no rights under the Fifth Amendment because he was a parolee. *Id.* at 4. On March 13, 2017, the parole board upheld the decision, which appears to be the revocation of Abdulrazzak's parole. *Id.*

On April 24, 2017, Abdulrazzak filed a complaint under § 1983. In his complaint and in a letter he later sent to the court, Abdulrazzak stated that he wished to file an amended complaint. Docket 1 at 9; Docket 7. The court

3

instructed Abdulrazzak that he had the right to amend his complaint and ordered Abdulrazzak to file his amended complaint by June 8, 2017. Docket 9. On May 24, 2017, Abdulrazzak moved to amend his complaint and attached a proposed amended complaint to his motion. Docket 10; Docket 10-1. In his amended complaint, Abdulrazzak raises seven claims, seeking declaratory and injunctive relief as well as damages. Docket 10-1 at 9. The motion to amend is granted.

### **LEGAL STANDARD**

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is

appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 1915A(b).

**DISCUSSION**

Abdulrazzak's amended complaint raises seven claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Docket 10-1. A number of his allegations are conclusory and repetitive, and his claims are often reiterated in multiple counts. The court has attempted to discuss each claim within separate counts, even though Abdulrazzak makes similar allegations throughout his amended complaint.

**I.  Count I**

In Count I, Abdulrazzak raises claims under the First, Fifth, Eighth, and Fourteenth Amendments against South Dakota Secretary of Corrections (SD DOC) Dennis Kaemingk, SD DOC Policy Maker Aaron Miller, the SD Board of Pardons and Paroles (the Board), and the Director of the Board Doug Clark. Docket 10-1 at 4. Abdulrazzak states that he brings these claims against defendants "as municipalities" and alleges that there is a policy to discriminate against him as a non-citizen of the United States. *Id.* He alleges that the policy required him to admit his guilt and participate in sex offender treatment, requirements that were not in his original parole agreement. *Id.*

5

The defendants are not "municipalities." Even if they were, a municipality may only be liable for a violation of constitutional rights if the violation was caused by its customs or policies. *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (quoting *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011)). Abdulrazzak does not point to a custom or policy that violated his rights. He argues that he was discriminated against as a non-citizen and an Iraqi, but he alleges that the discrimination started two years into his parole. He does not explain how his citizenship status or nationality changed and caused defendants to begin discriminating against him. He also alleges elsewhere that the parole requirements were added after and because his immigration case was settled. Docket 10-1 at 6. Therefore, Abdulrazzak fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**II.    Count II**

In Count II, Abdulrazzak raises claims under the First, Fifth, Eighth, and Fourteenth Amendments against Warden Robert Dooley, Deputy Warden Susan Jacobs, and Unit Staff Member Kim Lippincott. Docket 10-1 at 6. Abdulrazzak claims that Dooley, Jacobs, and Lippincott violated his rights by failing to discuss the requirements of parole that were subsequently added. *Id.* He alleges that they discussed the parole requirements with United States citizens. *Id.* He also alleges that if defendants had discussed these parole requirements with him, he would have invoked his Fifth Amendment rights. *Id.*

6

In *McKune v. Lile,* 536 U.S. 24 (2002), a plurality of the Supreme Court held that prison officials did not violate a prisoner's Fifth Amendment rights when they changed the prisoner's privilege status level and moved him to a maximum-security facility after he refused to participate in a sexual abuse treatment program, which required him to admit all prior improper sexual activities without guaranteed immunity. The Court found that these consequences were not severe enough to constitute "compulsion" for purposes of the Fifth Amendment right against self-incrimination. *Id.* There, the plaintiff complained he would be transferred and lose privileges, but the Court observed that his decision would "not extend his term of incarceration" or affect his parole eligibility. *Id.* at 38.

The Eighth Circuit Court of Appeals discussed *McKune* in *Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007). There, Entzi claimed that his probation officer compelled him to be a witness against himself by filing a petition to revoke his probation when it was discovered that Entzi had not finished the sex offender treatment. *Id.* at 1001. The state did not revoke Entzi's probation, but Entzi did have to pay an attorney to defend him in the revocation process. *Id.* at 1002. The Eighth Circuit found that this did not constitute compulsion.

The Eighth Circuit found that, even assuming the probation officer's actions constituted compulsion, Entzi did not have a cause of action for damages under § 1983. "[T]he general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled

7

self-incrimination unless compelled statements are admitted against him in a criminal case." *Id.* (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The "core guarantee" of the self-incrimination clause is evidentiary. *Id.* (citing *Chavez*, 538 U.S. at 778). Although the court "left open the possibility that a 'powerful showing' might persuade [it] to expand the protection of the self-incrimination clause to the point of civil liability," an expansion of the clause should not be implemented through money damages. *Id.* (quoting *Chavez*, 538 U.S. at 778) (citation omitted).

The Eighth Circuit found that Entzi had made no showing that evidentiary protections were inadequate to protect his constitutional rights. *Id.* at 1002-03. Here, Abdulrazzak alleges more serious consequences than paying an attorney to defend him: he alleges his parole was actually revoked. This was one of the consequences the Supreme Court stated may violate a prisoner's rights in *McKune*. *See Bradford v. Mo. Dep't of Corr.*, 46 F. App'x 857, 858 (8th Cir. 2002) (finding prisoner stated a claim under *McKune* by claiming that defendants' violated his constitutional rights by denying him parole because of his refusal to participate in sex offender treatment). Because the court is viewing this claim in the light most favorable to Abdulrazzak at this stage, the claim is not frivolous or malicious and may state a cause of action.

The court will next consider whether Abdulrazzak has stated a claim against Dooley, Jacobs, and Lippincott. Abdulrazzak fails to allege facts concerning how these individual defendants violated his rights. Based on their

8

titles, it appears that defendants are prison employees, and such defendants generally are not liable in claims concerning parole. *See Munson v. Norris*, 435 F.3d 877, 879-80 (8th Cir. 2006) (upholding dismissal of prisoner's claims that he was being forced to admit to crimes he was convicted of in sex offender treatment because he sued prison officials who had no authority over prison conditions). Therefore, Abdulrazzak fails to state a claim upon which relief may be granted in Count II, and that claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.    Count III

In Count III, Abdulrazzak claims that his rights were violated because defendants did not discuss the new parole requirements with him, and they unconstitutionally added the new requirements without notice. In *Figg v. Russell*, 433 F.3d 593 (8th Cir. 2006), a South Dakota parolee alleged that she was illegally incarcerated after being detained for a parole violation. Figg raised a claim against her parole agent because the agent offered her a parole agreement without giving her notice that the terms applied to her previously suspended sentence. *Id.* at 599. The Eighth Circuit found this function "so associated with the function of the Parole Board that [the parole agent], too, is cloaked in absolute immunity[,]" and dismissed the claim. *Id.* at 599-600 (citing SDCL 24–15–1.1).

Abdulrazzak has not alleged that Dusti Werner, J.C. Smith, and Jushua Kaufman made an independent decision to add parole requirements. In fact, in Count I, Abdulrazzak alleges that this is a policy of the parole board. The

9

decisions are therefore "so connected to the quasi-judicial role the Parole Board performed in granting parole in the first place, that they were but an extension of that function[,]" and defendants are absolutely immune. Therefore, Abdulrazzak fails to state a claim upon which relief may be granted, and Count III is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV. Count IV

In Count IV, Abdulrazzak claims that Kaufman denied him treatment for PTSD in order to coerce him to agree to admit to his crimes, that he was completely denied access to legal assistance and computers to do legal research, and that he was denied the ability to do laundry multiple times. Docket 10-1 at 13-14. The Eighth Circuit has found that a parolee states a claim of deliberate indifference to serious medical needs by alleging that a parole officer interfered with the parolee's attempts to receive medical care. *See Jones v. Moore*, 986 F.2d 251, 253 (8th Cir. 1993). Abdulrazzak alleges that Kaufman denied him access to care for his PTSD. Therefore, Abdulrazzak states a deliberate indifference claim against Kaufman, and this claim survives screening.

Abdulrazzak also alleges that Kaufman denied him access to legal assistance or computers to do legal research and the ability to do laundry. Both of these claims fail because Kaufman is a psychologist. Docket 10-1 at 11. As such, Kaufman has no power over whether Abdulrazzak is allowed to use a computer or do his laundry. Therefore, Abdulrazzak fails to state a claim upon which relief may be granted, and these claims against Kaufman for

denial of access to legal assistance on computers and laundry are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V. Count V

In Count V, Abdulrazzak alleges that Werner violated his constitutional rights by denying him access to the courts. Abdulrazzak alleges that Werner denied him access to his legal documents, denied him paper, and denied him access to the law library or any computer. Docket 10-1 at 15. Abdulrazzak alleges that he was working on his habeas petition and an immigration case, and Werner caused him to miss a deadline for filing, although he does not state for which case. *Id.*

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). This requires " 'prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Id.* (citation omitted). Although it does not appear that Abdulrazzak was incarcerated in the penitentiary, his amended complaint makes it clear that he was incarcerated in some form at that time and that defendants had control over his access to the courts.

To prove a violation of the right of access to the courts, a prisoner must establish that he has been injured by the violation. *Id.* at 680. Abdulrazzak alleges that he missed a filing deadline because he was not allowed the assistance described above. In fact, he alleges he was purposefully denied.

11

Therefore, Abdulrazzak states a claim that he was denied access to the courts by Werner.

**VI.   Count VI**

In Count VI, Abdulrazzak repeats the allegations concerning the changes in his parole conditions discussed above. He adds that Werner and Kaufman deprived him of his cell phone, video visitation with his parents, calls to his niece, and Arabic-language media. As discussed above, the addition of these conditions did not violate Abdulrazzak's rights, and these conditions are the type of condition that the Supreme Court found did not constitute compulsion under the Fifth Amendment. *See McKune*, 536 U.S. at 24. Therefore, Abdulrazzak fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**VII.  Count VII**

In Count VII, Abdulrazzak alleges that unknown correctional officers denied him access to the courts. He alleges that his property, including a flash drive which had his legal materials stored on it, was under the control of the unknown correctional officers who had the only key to his locker, which was locked at all times. Docket 10-1 at 18-19. He alleges that unknown correctional officers intentionally "lost" his flash drive in order to stop him from fighting deportation in his immigration case. *Id.* at 18. He also alleges that this was done in order to end his habeas case and the uncovering of unconstitutional actions by the state during his trial. *Id.* at 18-19. Finally,

12

Abdulrazzak argues that it is unlikely that his flash drive was stolen by another inmate because there were items far more valuable than the flash drive in his locker that were not taken. *Id.* at 20.

"The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts." *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) (citation omitted). "[T]he destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest." *Id.* Defendants have not been served and have not had a chance to justify their actions. At this point, it is premature to dismiss Abdulrazzak's claim. The court finds that he states a denial of access to the courts claim upon which relief may be granted against John Doe 1 and John Doe 2.

## VII. Motion to Appoint Counsel

Abdulrazzak moves the Court to appoint him counsel. Docket 11. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claim. *Id.* Abdulrazzak's claims are not complex, and he appears able to adequately present his § 1983 claims at this time. Therefore, his motion is denied.

The Court is aware that this situation may change as litigation progresses. As the Eighth Circuit Court of Appeals instructs, the court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

Thus, it is ORDERED

1. Abdulrazzak's motion to amend (Docket 10) is granted.
2. The clerks office shall refile Docket 10-1 as Abdulrazzak's amended complaint.
3. Abdulrazzak's deliberate indifference claim against Kaufman (part of Count IV), his denial of access to the courts claim against Werner (Count V), and his denial of access to the courts claim against John Doe 1 and John Doe 2 (Count VII) survive screening under 28 U.S.C. § 1915A(b)(1).
4. The remainder of Abdulrazzak allegations fail to state a claim upon which relief may be granted, and these claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Dennis Kaemingk, Aaron Miller, SD. BD. of Pardons and Paroles, Doug Clark, Robert Dooley, Susan Jacobs, Kim Lippincott, J.C. Smith, Dakota Psychological Services LLC, and Jane Doe are dismissed as defendants.

5. The Clerk shall send blank summons forms to Abdulrazzak so he may cause the summons and amended complaint to be served upon Kaufman, Werner, Doe 1, and Doe 2.

6. The United States Marshal shall serve a copy of the Amended Complaint (Docket 10-1), Summons, and this Order upon defendants as directed by Abdulrazzak. All costs of service shall be advanced by the United States.

7. Defendants will serve and file an answer or responsive pleading to the remaining claims on or before 21 days following the date of service.

8. Abdulrazzak will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

9. Abdulrazzak will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated July 14, 2017.

        BY THE COURT:

        /s/ *Karen E. Schreier*
        KAREN E. SCHREIER
        UNITED STATES DISTRICT JUDGE