UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HAIDER SALAH ABDULRAZZAK, | 4:17-CV-04058-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| J.C. SMITH, in his individual and official capacity; DUSTI WERNER, in his individual and official capacity; JOSHUA J. KAUFMAN, in his individual and official capacity; F/N/U BERTSCH, in his individual and official capacity; and JOHN DOE 2, in his individual and official capacity; | |
| Defendants. | |

Plaintiff, Haider Salah Abdulrazzak, is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. He filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Defendants now move for summary judgment. Docket 81. Abdulrazzak opposes the motion. Docket 99. Abdulrazzak has also filed various miscellaneous motions.

**FACTUAL BACKGROUND**

Viewing the evidence in the light most favorable to Abdulrazzak, the facts are:

Abdulrazzak is a forty-three years old citizen of Iraq. *See* Dockets 82-11 and 101 at 1. He was admitted to the United States as a refugee on June 30,

2009. *Id.* A Minnehaha County Grand Jury indicted Abdulrazzak on 14 counts of possessing, manufacturing or distributing child pornography in violation of S.D.C.L. § 22-24A-3 on September 9, 2010. Docket 33-4. A jury later returned a guilty verdict on all 14 counts. On December 20, 2011, Abdulrazzak was sentenced to serve consecutively a custody sentence of three years, with two years suspended, on the first six counts and of three years, with one year suspended, on count seven. Docket 82-7. No sentence was imposed on counts eight through fourteen. *Id.*

The Department of Homeland Security (DHS) issued an "Immigration Detainer-Notice of Action" on January 17, 2012. *See* Dockets 82-14 and 86 ¶ 4. The detainer stated that the local United States Immigration and Customs Enforcement (ICE) Office had "initiated an Investigation to determine whether [Abdulrazzak] is subject to removal from the United States." Docket 82-14. DHS requested that the South Dakota State Penitentiary (SDSP) "maintain custody of [Abdulrazzak] . . . beyond the time when [Abdulrazzak] would have otherwise been released from your custody to allow DHS to take custody of the subject." *Id.*

**Notice of Parole Conditions**

Abdulrazzak was initially paroled on June 25, 2014 and transferred to ICE custody under the Immigration Detainer. Dockets 10-1 at 7 and 86 ¶ 5. Prior to his release into ICE custody, Abdulrazzak signed his first Parole Standard Supervision Agreement (2014 Agreement). The 2014 Agreement included the following provision:

> Upon release from any hold status I will return immediately by phone to the SD Interstate Parole Office at 605-782-3153 and return to SD as directed. Failure to do so will constitute a violation of parole. Upon return to SD I will turn myself in to [Admission & Orientation Unit] at the South Dakota State Penitentiary in Sioux Falls, South Dakota for assessment and placement into the CTP program.

Docket 33-2. The 2014 Agreement did not require Abdulrazzak to undergo sex offender treatment. *Id.* It is undisputed that the 2014 Agreement referred to an "assessment" upon return to the SDSP and before release into the community. Docket 33-2.

Defendants allege that Abdulrazzak was initially not required to undergo sex offender treatment because he faced possible deportation from the United States. Docket 86 ¶ 6. Defendants claim sex offender treatment during this initial parole was premature and unnecessary. *Id.* Abdulrazzak disagrees. He alleges that his risk criteria required that he complete Sex Offender Treatment before being released on parole and that this requirement was hidden from him. Docket 101 at 2. Abdulrazzak further alleges that defendants informed other inmates, with the same risk criteria as Abdulrazzak, that they were required to complete sex offender treatment prior to being released on parole. Docket 31-1 at 6. Abdulrazzak alleges that if defendants had discussed these parole requirements with him, he would have invoked his Fifth Amendment rights. *Id.*

Abdulrazzak was released from the ICE hold on April 20, 2016, because he temporarily settled his immigration case. Dockets 86 ¶ 8 and 82-15. As required under the 2014 Agreement, Abdulrazzak reported to the Admission &

3

Orientation Unit at the South Dakota State Penitentiary. Dockets 86 ¶ 9 and 82-16. Dusti Werner was then assigned to serve as Abdulrazzak's parole agent. Docket 86 ¶ 9.

Defendants allege that Abdulrazzak was required to have a Pre-Release Psychosexual completed before he could be placed into the Community Transition Program. Dockets 86 ¶ 8 and 82-15. The 2014 Agreement even referred to an "assessment" before release into the community. Docket 33-2. Based on his conviction, Abdulrazzak met the criteria for being a sex offender under SDCL § 22-24B-1. *See* Docket 84 ¶ 3. Under South Dakota Department of Corrections (SDDOC) Policy 1.4.A.3, SDDOC will "offer the Sex Offender Management Program (SOMP) to offenders assessed as needing sex offender treatment." *Id.* ¶ 4. The policy requires a psycho-sexual assessment to be completed and supplied to the Board of Pardons and Paroles and the Warden. *Id.* Abdulrazzak disputes that he was required to complete a pre-release psychosexual assessment, because he contends that he was pre-release status before his initial parole into ICE custody. Docket 101 at 2.

On April 27, 2016, Joshua Kaufman interviewed Abdulrazzak for the interview portion of his Pre-Release Psychosexual Assessment. Dockets 82-1 and 84. The Pre-Release Psychosexual Assessment noted that Abdulrazzak had not completed any form of institutionalized sex offender treatment and recommended that Abdulrazzak "should be required to complete weekly, group sex offender treatment for a period of 18 to 24 months." Dockets 82-1 at 4. The assessment also recommended that Abdulrazzak "should be required to

complete individualized sex offender specific treatment in the community prior to his release." *Id.*

On April 28, 2016, Abdulrazzak signed a "STOP contract" where he agreed to "be completely honest and assume full responsibility for [his] offense(s) and sexual behavior." Docket 82-3. Abdulrazzak contends he never agreed to complete STOP because it was not discussed when he was initially paroled under the 2014 Agreement. Docket 101 at 3. Abdulrazzak alleges that he first learned about STOP on April 27, 2016. *Id.*

On April 29, 2016, Abdulrazzak signed a new Parole Standard Supervision Agreement (2016 Agreement). Docket 33-3. Like the 2014 Agreement, the 2016 Agreement included the provision that Abdulrazzak must "participate, cooperate, and complete any programs as directed." *Id.* This agreement also included the following provision:

> OTHER: 1. Register as a sex offender according to local and state laws.
> 2. No contacts with victims or anyone under 18 years of age, unless approved by treatment provider and parole agent in advance.
> 3. You shall not socialize, date, form a romantic or sexual relationship, or marry anyone with physical custody of children under 18 years of age.
> 4. You shall submit, at your own expense, to any program of psychological or physiological assessment and monitoring at the direction of parole agent or treatment provider[.] This includes, but not limited to the polygraph, plethysmograph, and Abel Screen to assist in treatment, planning and case monitoring.
> 5. You shall notify third parties of your complete criminal record, permit the parole agent or treatment provider to confirm compliance with this notification requirement and make any other notifications as the parole agent deems appropriate. You shall inform all persons with whom you have an established or ongoing relationship about your complete criminal history.

6. You shall not go to or loiter near school yards, parks, playgrounds, swimming pools, arcades, or other places primarily used by children under the age of 18 years old.

7. You shall not be employed or participate in any volunteer activity where you have contact with children under the age of 18 years old unless approved by treatment provider and parole agent.

8. You will not own, operate, or possess any cell phone with a camera, internet access, or text messaging.

9. No computer internet/on-line access or use without prior approval of parole agent and treatment provider. Any internet use will be subject to monitoring at the discretion of the parole agent or treatment provider.

Docket 33-3 at 2. Abdulrazzak contends this is a "modified" agreement and he signed it under duress. Docket 101 at 3.

On May 17, 2016, Abdulrazzak signed an Individualized Supervision Agreement for the South Dakota Department of Corrections Sex Offender Management Program. Docket 82-2. A translator from A to Z World Languages, parole agent Werner, treatment provider Joshua Kaufman, and Abdulrazzak were present at this meeting. Docket 86 ¶ 28. Defendants allege that, by signing the Individualized Supervision Agreement, Abdulrazzak agreed to "attend and participate in weekly individualized supervision meetings with [his] treatment provider and parole officer." Dockets 82-2 and 86 ¶ 6. And Abdulrazzak agreed that he would "honestly review all of my sexual behavior including all of [his] sexual behaviors including all of [his] sexual relationships." Abdulrazzak also agreed to "take clinical polygraph examinations at least every 3 months while [he is] in the community." Dockets 82-2 and 86 ¶ 17. Werner, assisted by a translator from A to Z World Languages, also reviewed the 2016 Agreement. Docket 86 ¶ 28. Under the 2016 agreement, Abdulrazzak agreed to "participate | cooperate | and

complete any programs as directed" and to "comply with all instructions in matters affecting my supervision | and cooperate by promptly and truthfully answering inquiries directed to me by a Parole Agent." Docket 33-9.

**Revocation of Parole**

On October 27, 2016, Werner submitted a Violation Report that Abdulrazzak was "non-compliant in regards to his sex offender programming and was subsequently terminated from community-based sex offender programming." Dockets 33-9 and 87 ¶ 12. The Report noted that Abdulrazzak "had multiple instances in which he did not comply with directions given to him such as completing some of his homework assignments." Docket 33-9. "He also left the unit when he was instructed that he could not." *Id.* at 2. Abdulrazzak contends that he complied with treatment and answered all questions truthfully. Docket 101 at 4.

As part of the sex offender programing, Abdulrazzak was "assigned homework which was to be reviewed with the program provider and Agent Werner." Dockets 86 ¶ 22, 82-5, 82-34 at 10-14. Werner alleges that there were occasions where Abdulrazzak "failed to complete the assigned homework in the time allotted" and had to be "given more time to complete the homework." Dockets 86 ¶ 23 and 82-34 at 13. And occasionally when Abdulrazzak attempted to complete the assignments asked of him he "would copy the examples instead of coming up with his own." Docket 33-9.

At the direction of his treatment provider, Abdulrazzak was scheduled to take "an instant offense polygraph" on October 19, 2016 "to determine where

his programming should go as he was continuing to deny and make no progress." Docket 33-9 at 2. The day before the exam, Abdulrazzak told Werner that he was "ready for it" and "would pass no problem." Dockets 86 ¶ 28 and 82-34 at 22-23. Abdulrazzak alleges he made these statements under the threat of a parole violation. Docket 101 at 5.

At the scheduled exam, Abdulrazzak expressed concern that the outcome of the polygraph would be used to bring about new criminal charges or affect his ongoing habeas corpus proceeding. Dockets 82-24 and 101 at 5. Abdulrazzak claims he "was informed that the outcome of said polygraph would be used to bring new criminal charges." Docket 101 at 5. Defendants allege that the polygraph examiner "attempted to re-assure him that the exam was solely for his treatment assessment and parole status." Dockets 82-24 and 86 ¶ 30. But the examiner determined that a polygraph exam should not be administered "[b]ased on [Abdulrazzak's] reservations and the fear of violating [Abdulrazzak's] civil rights." Docket 82-24. The examiner explained that "until he had this resolved with his attorney I could not ethically give him the polygraph exam." *Id.*

Abdulrazzak's attorney later contacted Werner and stated that she was "fine with him taking the polygraph." Dockets 86 ¶ 32 and 82-25. Abdulrazzak's attorney further advised Werner that Abdulrazzak would like to take the polygraph. Docket 86 ¶ 35 and Docket 82-25. Abdulrazzak was provided with an opportunity to take a polygraph exam again on October 24, 2016. Docket 33-9 at 2. The Violation Report stated that "[d]uring this exam,

Mr. Abdulrazzak blatantly failed to follow directions but the exam was still valid and found that Mr. Abdulrazzak was deceptive in regards to questions about committing the crime he was serving time for." *Id.*

After the failed polygraph exam, Werner alleges that she verbally directed Abdulrazzak not to leave Unit C. Docket 86 ¶ 51. Abdulrazzak alleges that he did not leave Unit C without permission. Docket 101 at 7. But Abdulrazzak stated that he left Unit C on October 25, 2018 to attend his driving license examination at 10:00. Docket 82-34 at 20-21.

Dakota Psychological Services (DPS) sent Abdulrazzak a treatment termination letter dated October 31, 2016, stating that he "has not responded to various treatment efforts provided so far DPS to help him work through his denial and address the sexual problems indicated by his conviction." Docket 33-9 at 4. Abdulrazzak claims that this letter "did not present any kind of problems in my answer to defendant Kaufman." Docket 101 at 6.

On March 13, 2017, there was a hearing before the Board of Pardons and Paroles as to whether Abdulrazzak's parole should be revoked. Docket 36-1. The Parole Board determined that Abdulrazzak violated both Conditions 10 and 13E of his Supervision Agreement. Docket 36-1. The Parole Board found that "explanations offered by the inmate do not mitigate, justify or excuse conduct while on supervision." *Id.*

**Access to Documents**

After release from ICE custody, Abdulrazzak returned to SDSP with a large box of legal documents and paperwork. Docket 82-15 at 2. Abdulrazzak

alleges that he was working on a state habeas petition and a motion to reconsider/reopen his immigration case. *See* Docket 101 at 12-14. Abdulrazzak alleges that he needed digital material on a CD for his immigration case and a USB drive for his habeas case. Docket 101 at 10.

Abdulrazzak maintains that Werner knew he needed access to digital information but denied him that access. Docket 31-1. As a result, Abdulrazzak alleges that he missed deadlines, although he does not specify whether it was in his state habeas corpus case or immigration case. Docket 10-1 at 15.

Werner alleges that she first learned about the box of legal materials from an April 19, 2016 email. Dockets 86 ¶ 58 and 85-15. Werner and Abdulrazzak later discussed the legal materials at their first meeting on May 10, 2016. Werner's notes read:

> Agent Schaaf and I met with Haider at intake in Jameson today. He was upset that he couldn't get paperwork done for his immigration. I told him I would get him the paperwork he needs, he said he keeps it on a disc in his property. We explained to him that he cannot be in the library as he stated he would go due to his sex offense and cannot be on a computer since he is not allowed to use the internet. He stated he needed it to get his paperwork completed as his handwriting is not good. He went back and forth on his story about his paperwork being due Friday, then Thursday, then 30 days. He also kept stating that we were keeping him from filing his legal paperwork. He was explained that he may complete his paperwork, but could not use a computer to do so. To assist him, I requested that his paperwork in property be moved to Unit C for him to work on. I also told him that I would pick him up Tuesday morning for our appointment and bring him here, that if I could get him an ICE appointment, I would bring him there after. He also requested I set up an appointment [sic] with Julie Hofer, his public advocate that day. I told him I would try to get in contact with her. He was placed on GPS by the Glory House as I was leavign [sic].

Docket 82-28. Abdulrazzak alleges that he was never allowed access to his digitally stored legal documents. Docket 101 at 9.

After their initial meeting, Werner contacted the Sioux Falls ICE office. Dockets 86 ¶ 87 and 82-38. In a May 10, 2016 email to Deportation Officer Darin Gergen, Werner indicated that she "would like to know the next steps in regards to Mr. Abdulrazzak as I am not familiar with the ICE process and how goes about getting a work permit." Dockets 86 ¶ 87 and 82-38. Werner does not claim that she ever asked about Abdulrazzak's immigration case or any possible deadlines.

Werner also contacted Abdulrazzak's public advocate Julie Hofer. Hofer was appointed to represent Abdulrazzak in his state habeas corpus case. Docket 82-8 at 2. Hofer informed Werner that "All the paperwork she needed for his legals had been filed a year and a half ago." Docket 86 ¶ 68. Hofer stated that there were "no more deadlines and the information [Abdulrazzak] is trying to get to her (his personal arguments) will not be what she uses as her argument."

Werner contacted Kingdom Boundaries about supervising Abdulrazzak's computer use. Dockets 86 ¶ 79 and 82-20. The Kingdom Boundaries' computer was available on July 7, 2016. *Id.* Werner also consulted the Sex Offender Management Program in an attempt to find a way for Abdulrazzak to use a computer. Docket 86 ¶ 67.

At a May 31, 2016 meeting, Abdulrazzak asked Werner for more hours to use the Department of Labor computer. Dockets 86 ¶ 69 and 82-32. Werner

responded that "[i]f his lawyer verified that he needed the 3 days that he requested to work on his argument" she "would give him the time." *Id.* On June 7, 2016, Werner again contacted Hofer and stated that they needed to figure out how to get Abdulrazzak to a computer that did not violate his parole agreement. Dockets 86 ¶ 70 and 82-19. Werner again asked if there were any impending deadlines and Hofer responded that there were no upcoming deadlines. Dockets 86 ¶ 72 and 82-37. At some intervening time, Abdulrazzak went to the Department of Labor and learned he could not use its computers because they are for job searches. *Id.*

At a June 14, 2016 meeting, Abdulrazzak asked Werner for three more hours for community use. Dockets 86 ¶ 73 and 82-32. Werner denied the request explaining that there was nowhere appropriate for Abdulrazzak to use a computer in the community. *Id.* Werner provided Abdulrazzak two options: Abdulrazzak could complete his work by hand as there was no need for it to be typed or Abdulrazzak could use a computer under the supervision of his lawyer to finish up his work. Dockets 86 ¶ 74 and 82-32.

At a June 21, 2016 meeting, Abdulrazzak told Werner that he filed a lawsuit to address his legal access issues. Dockets 86 ¶ 77 and 82-29. Werner reminded Abdulrazzak that she would allow him to use a computer under appropriate supervision, such as under the supervision of his lawyer. *Id.*

At a July 12, 2016 meeting, Abdulrazzak informed Werner that he was "done with his argument" and therefore "didn't need to ask about computer use again." Dockets 86 ¶ 85 and 82-29.

Werner maintains that she was not aware of any deadline missed in his state habeas proceed or immigration case. Docket 86 ¶¶ 82, 96. Werner further alleges that, by signing the Parole Supervision Agreement on April 29, 2016, Abdulrazzak expressly agreed that he would not be allowed any computer internet access without prior approval of his parole agent and treatment provider. Docket 33-3. The agreement also stated that "any internet use would be subject to monitoring at the discretion of the parole agent or treatment provider." *Id.* Abdulrazzak contends these restrictions were added because he would not admit guilt. Docket 101 at 9. Abdulrazzak further alleges that he signed the 2016 Agreement under threat of a parole violation. *Id.*

**Loss of USB Memory Flash Drive**

Abdulrazzak alleges that Bertsch and John Doe 2 intentionally lost Abdulrazzak's legal materials created during Abdulrazzak's two years on parole. Docket 47. Abdulrazzak claims this was done to hinder his ability to fight his immigration case and enable the government to deport him to Iraq. *Id.* Abdulrazzak alleges that the USB drive was located in a black bag stored "in the outside locker at Unit C" during the time he was in the Community Transition Program, which was from April 20, 2016 until November 2, 2016. Dockets 31-1 and 101 at 16. Abdulrazzak stated, "It makes no sense that my USB flash memory drive would be *accidentally* (lost or stolen) without the staff consent since those officers reasonably would be the only people who would have access to my outside locker, taking in consideration that the lost was

selective in nature . . . ." Docket 47 at 20. Abdulrazzak alleges that there were more valuable items in his locker that were not taken. *Id.*

Defendant Bertsch alleges that she was not working in Unit C between April 20, 2016 until November 2, 2016 and therefore was not in charge of Abdulrazzak's property. Docket 85 ¶ 7. At that time, Bertsch served as a Unit Manager of the Special Housing Unit on the "Hill" at the SDSP. *Id.* ¶ 8. Bertsch also contends she did not "rotate out to Unit C" until December 2016. Bertsch denies any knowledge of any "black bag" or a USB drive. *Id.* ¶¶ 9, 10. Bertsch contends that her only involvement was signing the "Prohibited Property, Disposition of" sheet used in connection with disposition of certain items of Abdulrazzak's personal belongings not allowed inside the SDSP. Dockets 85 ¶ 2 and 82-16. The only prohibited items referred to in the sheet are a cell phone and charger and $1.18. Docket 82-16.

## DISCUSSION

### I.    Motion to Refile Interrogatories and Requests for Admission

Abdulrazzak asks this court to accept his interrogatories and requests for admissions for filing. Docket 51. Abdulrazzak attempted to file his interrogatories and requests for admission on December 7, 2017. The Clerk of Court returned the interrogatories and requests for admission along with a letter explaining D.S.D. Civ. LR 26.1(A). Under D.S.D. Civ. LR 26.1(A), "depositions, interrogatories, requests for documents, requests for admissions, and answers and responses thereto must not be filed." Thus, Abdulrazzak's motion to refile (Docket 51) is denied.

## II.     Motion to Appoint Counsel

Abdulrazzak moves the Court to appoint him counsel. Docket 56. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claim. *Id.* Abdulrazzak's claims are not complex, and he appears able to adequately present his § 1983 claims. Therefore, his motion (Docket 56) is denied.

## III.    Motion to Reconsider Amended Order Denying in Part and Granting in Part Motion to Amend and Miscellaneous Other Motions

Abdulrazzak moves this court to reconsider its Amended Order Denying in Part and Granting in Part Motion to Amend and Miscellaneous Other Motions filed on December 17, 2017 (Docket 46). Docket 57. But before the court ruled on the motion to reconsider, Abdulrazzak filed a notice of interlocutory appeal as to the same December 17, 2017 order. Docket 58. The court stayed this case pending resolution of Abdulrazzak's interlocutory appeal. Docket 71. On March 26, 2018, the Eighth Circuit dismissed the appeal for lack of jurisdiction (Docket 74) and declined a rehearing by panel (Docket 97). The court now lifts the stay (Docket 71) and takes up Abdulrazzak's motion to reconsider (Docket 46).

A district court's decision on a motion for reconsideration rests within its discretion. *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir.

1988). " 'Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.' " *Id.* at 414 (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987)). The court has reconsidered its order and attempted to discuss each claim within separate counts despite significant overlap.

### A. Count I - Discrimination

In Count I, Abdulrazzak asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments against South Dakota Secretary of Corrections (SD DOC) Dennis Kaemingk, SD DOC Policy Maker Aaron Miller, the SD Board of Pardons and Paroles (the Board), and the Director of the Board Doug Clark. Docket 31-1 at 4. Initially, Abdulrazzak stated that he brings these claims against defendants "as municipalities." In his motion to reconsider, Abdulrazzak explains that his claim against defendants "as municipalities" was based on a misunderstanding of the word municipalities. Docket 57 at 2. The court rescreens his claim against these defendants.

Abdulrazzak alleges that Kaemingk, Miller, the Board, and Clark discriminated against him as a non-citizen by requiring him to admit his guilt and participate in sex offender treatment, requirements that were not in his original parole agreement. Docket 31-1 at 4. Abdulrazzak claims that these parole requirements were added later because his immigration case was settled. Other offenders with the parole requirement of admitting guilt learn of the requirement earlier than two years into their parole. Docket 57 at 3.

16

Abdulrazzak claims that Kaemingk, Miller, the Board, and Clark had access to the COMS system and they failed to take action to correct the events that led to his parole revocation. Docket 57 at 2.

Abdulrazzak fails to demonstrate how this alleged discrimination violated his First, Fifth, or Eighth Amendment rights. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to construct a legal theory that assumes facts which have not been pleaded. *Id.* Thus, Abdulrazzak fails to state a claim under the First, Fifth, or Eighth Amendments in Count I.

As to the Fourteenth Amendment claim, Abdulrazzak now alleges a "class of one" Equal Protection claim, which was recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). Docket 57 at 5. The Eighth Circuit applied the class of one analysis to a prison inmate who alleged that he was being discriminated against because the parole board denied him parole while granting parole to similarly situated inmates. *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008). Because Nolan did not allege he was a member of a protected class or that his fundamental rights had been violated, he had to show that "the Board systematically and 'intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Id.* (quoting *Olech*, 528 U.S. at 564). To do this, Nolan had to " 'provide a specific and detailed account of the nature of the preferred treatment of the

favored class,' especially [because] the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir. 2004)).

At the summary judgment stage, the court held that Nolan failed to provide the evidence necessary to meet his burden because he did not demonstrate that the board "intentionally discriminated against him or even denied him parole on an irrational basis." *Id.* The board had consistently given legitimate reasons for denying parole. *Id.* The record also lacked "sufficient evidence about Nolan's own parole file to enable a meaningful comparison between him and those he claims are similarly situated." *Id.* Even though Nolan provided "a spreadsheet listing the names of approximately twenty other inmates, together with their races, the names of their offenses, sentence length, time served, parole hearing dates, and release dates[,]" the court found that this was insufficient for the court to meaningfully compare Nolan with other inmates. *Id.*

Under the analysis in *Nolan*, Abdulrazzak fails to state an Equal Protection claim. Abdulrazzak provides no specific examples of others who were similarly situated but treated differently. Although Abdulrazzak sets forth facts suggesting pretext on defendants' part, he has not provided a spreadsheet as Nolan did, much less "a specific and detailed account of the nature of the preferred treatment of the favored class," which the *Nolan* court held was necessary to support an Equal Protection claim. *Id.* Abdulrazzak only sets forth conclusory allegations that defendants "will inform other individuals (U.S.

citizens) who their conviction circumstances similar to mine about the programing requirement prior to their release on parole and not 2 years later without a parole violation or change in the allegations of their conviction." Docket 57 at 3.

Even if the court found adequate specificity to state a valid Equal Protection claim, a prisoner must allege facts demonstrating that prison officials intentionally treated him differently than similarly situated inmates. *Nolan*, 521 F.3d 989-90. Abdulrazzak alleges that defendants admit that they did not discuss the treatment requirements until after his initial parole on May 17, 2016. But this does not demonstrate that prison officials intentionally treated him differently. Abdulrazzak makes no such allegation. Thus, Abdulrazzak's Equal Protection claim fails.

In Count I, Abdulrazzak also alleges that Greg Erlandson and Myron Rau violated Abdulrazzak's substantive due process rights by adopting the parole officer's report when they knew Abdulrazzak was invoking his Fifth Amendment rights. Docket 57 at 4. But members of the parole board are " 'absolutely immune from suit when considering and deciding parole questions.' " *Figg v. Russell*, 433 F.3d 593, 598 (8th Cir. 2006) (quoting *Patterson v. Von Riesen*, 999 F.2d 1235, 1238-39 (8th Cir.1993)).

After reconsideration, the court finds that Abdulrazzak fails to state a claim upon which relief may be granted in Count I.

**B. Count II – Notice of Parole Conditions**

In Count II, Abdulrazzak asks this court to reconsider his claims against defendants that did not survive screening and to consider his Equal Protection claims as a "class of one." Docket 57 at 7. Abdulrazzak reiterates that Warden Dooley, Deputy Warden Susan Jacobs, Unit Staff Member Kim Lippincott, parole officers, and treatment providers are members of the Sex Offender Management Program (SOMP) team and were therefore personally involved in failing to inform him of the treatment requirements. This is not new evidence. Abdulrazzak alleged in his second amended complaint that these defendants are members of the SOMP team. Docket 31-1 at 6. In its order at Docket 46, the court found that Abdulrazzak failed to state a claim against Dooley, Jacobs, Lippincott, the Board, Clark, Dakota Psychological Services, LLC, and Joshua Kaufman. Abdulrazzak claims no error of law or fact or newly discovered evidence. After reconsideration, the court finds that Abdulrazzak fails to state a claim upon which relief may granted in Count II against defendants except the claim it previously found survived screening against parole officer Werner. *See* Docket 46 at 5.

Even considering Count II as a "class of one," Abdulrazzak fails to state a claim for the same reasons stated above in Count I. Abdulrazzak fails to provide specific examples of others who were similarly situated but treated differently. To state a valid Equal Protection claim a prisoner must allege facts demonstrating that prison officials intentionally treated him differently than similarly situated inmates. *Nolan*, 521 F.3d 989-90. Abdulrazzak fails to allege

that defendants intentionally treated him differently than similarly situated inmates. After reconsideration, the court finds that Abdulrazzak fails to state a "class of one" claim.

### C. Count III - Retaliation

In Count III, Abdulrazzak asks this court to reconsider his allegations against Werner and J.C. Smith. Docket 57 at 7. Abdulrazzak's claim that Werner and Smith revoked his parole in retaliation for exercising his Fifth Amendment right to not incriminate himself already survived screening. *See* Docket 46. In his motion to reconsider, Abdulrazzak now alleges that Werner and J.C. Smith violated his right to equal protection because defendants exceeded their authority when they waited two years to impose a treatment requirement without a parole violation or change in allegation of conviction. Abdulrazzak states, "the allegation is not against . . . imposing the treatment itself, rather . . . the timing of imposing the treatment by defendants 2 years . . . into my parole rather than prior to my release on parole[.]" Docket 57 at 7. But in the court's order at Docket 13, the court noted that in Count I Abdulrazzak alleged that the decision to add parole requirements is a policy of the parole board. *See* Docket 13 at 9. Thus, Abdulrazzak fails to allege that Werner and J.C. Smith were responsible for imposing the treatment requirement.

### D. Count IV

Abdulrazzak claims that the court missed his allegation against Kaufman and Dakota Psychological Services. Docket 57 at 8. Abdulrazzak alleges that

Kaufman and Dakota Psychological Services violated his rights because they terminated him from treatment in retaliation for exercising his Fifth Amendment right to not incriminate himself. *Id.* The court's order at Docket 46 addressed Abdulrazzak's motion to amend to add the treatment provider under Count II. The court stated, "The second amended complaint, however, contains no allegation that the treatment provider had the power to revoke Abdulrazzak's parole. Thus, it would be futile to allow an amendment of the complaint to add the treatment providers as named defendants in Count II." *See* Docket 46 at 8. Abdulrazzak's motion to reconsider provides no information that would change the court's previous finding and therefore is denied.

Abdulrazzak further requests that this court reconsider his claim against Kaufman and Dakota Psychological Services for their alleged participation in denying him access to the court by denying him access to a computer with internet to do his legal work while on parole when he did not admit guilt. As the court previously found, Kaufman and Dakota Psychological Services, as psychologist and service provider, have no absolute power over whether Abdulrazzak is allowed to use a computer. *See* Docket 13 at 10. Furthermore, Abdulrazzak fails to allege that Kaufman and Dakota Psychological Services ever denied his request to use the computer. Thus, Abdulrazzak fails to state a claim against Kaufman and Dakota Psychological Services.

### E. Count VI

Abdulrazzak asks this court to reconsider his allegations concerning changes in his parole conditions discussed above and the deprivation of a smart phone, video visitation with his parents, calls to his niece, and Arabic-language media. Docket 57 at 9. First, Abdulrazzak argues that *McKune v. Lile*, 536 U.S. 24 (2002) does not apply to his claims because he was not in prison. This argument fails because it does not address the reason for which the court relied on *McKune.* In *McKune*, a plurality of the Supreme Court held that prison officials did not violate a prisoner's Fifth Amendment rights when they changed the prisoner's privilege status level and moved him to a maximum-security facility after he refused to participate in a sexual abuse treatment program, which required him to admit all prior improper sexual activities without guaranteed immunity. *See McKune*, 536 U.S. at 24. The Court found that these consequences were not severe enough to constitute "compulsion" for purposes of the Fifth Amendment right against self-incrimination. *Id.*

Abdulrazzak cites several Eighth Circuit opinions where the Eighth Circuit invalidated conditions of supervised release that banned internet or computer use as overly broad. Docket 57 at 9-10. None of the cases Abdulrazzak cites address the Fifth Amendment or the use parole conditions to force a parolee to admit guilt. Thus, Abdulrazzak fails to state a claim.

### F. Count VII

Abdulrazzak ask the court to add defendants Joseph Siemonsma and Robert Berthelson. Docket 57 at 12. This court dismissed Siemonsma and

Berthelson because Abdulrazzak failed to state a claim upon which relief may be granted. Docket 46 at 12-13. In his second amended complaint, Abdulrazzak fails to allege any facts against Siemonsma or Berthelson. Their names are not even mentioned in Count VII. *See* Docket 47 at 18-20. Abdulrazzak's motion to reconsider fails to rectify the deficiencies of his second amended complaint. Thus, the court will not add Siemonsma and Berthelson as defendants.

## IV. Motion to Reconsider Order Granting Extension of Time to Answer

Abdulrazzak asks the court to reconsider its order granting defendants' motion for an extension of time to file an answer. Docket 59. Defendants filed their answer on January 17, 2018. Thus, Abdulrazzak's motion to reconsider order granting extension (Docket 59) is denied as moot.

## V. Motion for Discovery of Plaintiff's File

Abdulrazzak moves this court to order defendants' counsel to turn over Abdulrazzak's institutional file. Docket 60. Such a request should have been made to defendants through a request for production of documents. There is no indication that any such request was ever made. Therefore, Abdulrazzak's motion (Docket 60) is denied.

## VI. Motion to Strike Defendants' Answer to Second Amended Complaint

Abdulrazzak moves to strike portions of defendants' answer to the Second Amended Complaint under Fed. R. Civ. P. 12(f). Docket 72. Under Rule 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The court enjoys

"liberal discretion" in determining whether to strike a party's pleadings but it is an "extreme measure." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). Thus, motions to strike under Rule 12(f) are "infrequently granted." *Id.* Abdulrazzak failed to demonstrate how defendants' answer is a "redundant, immaterial, impertinent, or scandalous matter." Rather, Abdulrazzak's motion shows that he disagrees with the defendants' answer, but that is not a basis to strike pleadings. Abdulrazzak also argues that defendants' affirmative defenses should be stricken because "defendants failed to prove them." Defendants are under no obligation to prove their affirmative defenses in their answer. Thus, Abdulrazzak's motion to strike (Docket 72) is denied.

## VII. Motion for Entry of Default and Reconsideration of Clerk's Denial of Entry of Default

Abdulrazzak moved for default judgment on his motion to impose sanctions (Docket 75) and the Clerk of Court denied his request for entry of default (Docket 78). Abdulrazzak now moves the court to reconsider the clerk's entry of default. Docket 92. Abdulrazzak argues he is entitled to default judgment because defendants never opposed his motion for sanctions. Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). Defendants' lack of response to a motion is not a failure to plead or otherwise defend. Defendants filed an answer with affirmative defenses on January 17, 2018. Docket 64. Thus, Abdulrazzak's motion to reconsider clerk's entry of default (Docket 92) is denied.

Abdulrazzak moves the court for entry of default judgment against Kaufman (Docket 77) and moves the court to reconsider that motion (Docket 91). Abdulrazzak requests that default be entered against defendant Kaufman because Abdulrazzak claims Kaufman is evading service of process. To date, Kaufman has not been served. Default judgment cannot be entered against a party who has not been served. Thus, Abdulrazzak's motion for entry of default judgment (Docket 77) and motion to reconsider the same (Docket 91) are denied.

## VIII. Motions for Sanctions

Abdulrazzak moves this court to impose sanctions against defendants. Docket 76. Abdulrazzak alleges that defendants failed to comply with this court's December 12, 2017 order (Docket 46) directing defendants to disclose any contact information of Kaufman. Docket 76. Defendants responded to the court's order and explained they only had a phone number. Docket 55. Defendants also stated, "Counsel, however, is willing to provide the Court or the U.S. Marshals Service with the limited information now available if the Court deems it necessary. Counsel, if directed to do so by the Court, could provide said contact information to the U.S. Marshal's Service in a 'confidential memorandum' or furnish the same to the Court provided that said telephone number is under seal by the Court and not be a matter of public record." *Id.* The court has not yet ordered counsel to turn over the phone number. Thus, defendants have complied with the court's order and Abdulrazzak's motion (Docket 76) is denied.

## IX. Motion to Dismiss Defendants' Motion for Summary Judgment

Abdulrazzak moves to dismiss defendants' motion for summary judgment. Abdulrazzak argues that the motion is premature and that defendants exceed the scope of Abdulrazzak's claims. The court set February 28, 2018 as the deadline for defendants' motion for summary judgment based on qualified immunity. Docket 50. Defendants filed their motion for summary judgment on February 23, 2018. Docket 81. Thus, defendants' motion is not premature. Abdulrazzak contends that defendants should not raise issues involving his underlying state criminal conviction or his habeas petition. Docket 94. Abdulrazzak raised claims that implicate both his underlying conviction and his habeas proceeding. Thus, Abdulrazzak's motion to dismiss defendants' motion for summary judgment (Docket 94) is denied.

## X. Defendants' Motion for Summary Judgment

### A. Individual Capacity Claims

Defendants in their individual capacities contend that they are entitled to qualified immunity. Section 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983. The doctrine of qualified immunity, however, generally shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis,*

27

754 F.3d 541, 545 (8th Cir. 2014) (alteration omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two factors in either order. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). But "[t]o deny the officers qualified immunity, [the court] must resolve both questions in [the plaintiff's] favor." *Hawkins v. Gage Cty.*, 759 F.3d 951, 956 (8th Cir. 2014).

### 1. Count II – Notice of Parole Conditions

"[T]he general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case." *Entzi v. Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) (citation omitted). The Supreme Court "left open the possibility that a 'powerful showing' might persuade [it] to expand the protection of the self-incrimination clause to the point of civil liability[.]" *Id.* (quoting *Chavez v. Martinez*, 538 U.S. 760, 778 (2003)(plurality opinion)).

In *McKune*, a plurality of the Supreme Court held that prison officials did not violate a prisoner's Fifth Amendment rights when they changed the prisoner's privilege status level and moved him to a maximum-security facility after he refused to participate in a sexual abuse treatment program, which required him to admit all prior improper sexual activities without guaranteed immunity. *McKune v. Lile*, 536 U.S. 24, 38 (2002) (plurality opinion). The Court found that these consequences were not severe enough to constitute "compulsion" for the purposes of the Fifth Amendment right against self-incrimination. *Id.* There, the plaintiff complained he would be transferred and lose privileges, but the Court observed that this decision would "not extend his term of incarceration" or affect his parole eligibility. *Id.* at 38.

In *Entzi*, the Eighth Circuit denied a sex offender's claim that a probation officer violated his Fifth Amendment rights by filing a petition to revoke his probation when it was discovered that Entzi had not finished sex offender treatment where he would have had to admit his offense. *Entzi*, 485 F.3d at 1001. Relying on *McKune,* the Eighth Circuit found that the loss of an opportunity for a discretionary sentence-reduction credit "is not among the consequences for noncompliance that go 'beyond the criminal process and appear, starkly, as government attempts to compel testimony.' " *Entzi*, 485 F.3d at 1004 (quoting *McKune*, 536 U.S. at 53 (O'Connor, J., concurring)).

Here, Abdulrazzak's claim against Werner survived screening because he alleges that his parole was revoked after he refused to incriminate himself. Docket 46 at 7. Abdulrazzak claims that he would have invoked the Fifth

Amendment before his first release in 2014 if Werner would have provided adequate notice to him that he would later be required to admit guilt in sex offender treatment. Abdulrazzak alleges that this would have allowed him to "stay in prison until [he] flat time[d] without imposing the extra damages that may applied to me while on parole like parole violation consequences[.]" Docket 47 at 6.

The undisputed facts fail to show that Werner served as Abdulrazzak's parole agent in 2014, the time he claims he was constitutionally entitled to notice of the required sex offender treatment. It is well established that " 'liability under section 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.' " *Armour v. St. Louis Cty. Work*, 2008 WL 619381, *1 (E.D. Mo. Mar. 5, 2008) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). To state a claim under § 1983, Abdulrazzak must show that Werner "personally violated" his constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). Abdulrazzak was released from the ICE hold on April 20, 2016, because he temporarily settled his immigration case. Dockets 86 ¶ 8 and 82-15. After he reported to the Admission & Orientation Unit at the SDSP, Dusti Werner was then assigned to serve as Abdulrazzak's parole agent. Docket 86 ¶ 9. Abdulrazzak contends that Werner failed to provide notice of required sex offender treatment before he was initially released on parole in 2014. Because Werner was not assigned to serve as Abdulrazzak's parole agent until after Abdulrazzak's release on April 20, 2016, Werner lacked the personal involvement in failing to provide

notice that is necessary to state a claim under § 1983. Thus, Abdulrazzak fails to state a claim against Werner.

Even if Abdulrazzak did state a claim, Werner asserts that she is entitled to absolute immunity for her role in imposing, and enforcing, the various conditions set out in the parole supervision agreement. Docket 82 at 11. Werner cites *Figg v. Russell*, 433 F.3d 593, 599 (8th Cir. 2006) as support for her argument. In *Figg*, a South Dakota parolee alleged that she was illegally incarcerated after being detained for a parole violation. 433 F.3d at 596. Figg raised a claim against her parole agent because the agent offered her a parole agreement without giving her notice that the terms applied to her previously suspended sentence. *Id.* at 599. The Eighth Circuit found this function "so associated with the function of the Parole Board that [the parole agent], too, is cloaked in absolute immunity[,]" and dismissed the claim. *Id.* at 599-600 (citing SDCL 24–15–1.1). "[T]he extent of immunity accorded an official depends solely on the official's function." *Id.* at 599 (quoting *Nelson v. Balazic*, 802 F.2d 1077, 1078 (8th Cir. 1986).

Werner claims that she "was merely 'acting as a representative of the parole board' when, on May 17, 2016, she presented the 'Parole Standard Supervision Agreement' to Abdulrazzak for him to sign." Docket 82 at 9. "[T]he supervision agreements are prepared by the Director and Parole Board staff at the direction of the Parole Board." *Castaneira v. Ligtenberg*, 2006 WL 571985, at *4 (D.S.D. Mar. 7, 2006). The court finds that Werner is entitled to absolute immunity as an agent of the Parole Board for presenting the 2016 Agreement

to Abdulrazzak. Abdulrazzak's claim against Werner in her individual capacity must be dismissed, as "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Figg*, 433 F.3d at 597.

### 2. Count III – Retaliation

To establish a retaliation claim, Abdulrazzak must show "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). In order to succeed on a retaliation claim, a plaintiff must show that the "adverse action taken against him was 'motivated at least in part' by his protected activity . . . ." *Id.* (quoting *Revels*, 382 F.3d at 876). Although "[t]he causal connection is generally a jury question, . . . it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (quoting *Revels*, 382 F.3d at 876).

Abdulrazzak claims that Werner and Smith violated his constitutional rights because they revoked his parole in retaliation for exercising his Fifth Amendment right to not incriminate himself. Docket 46 at 8. Defendants argue that Abdulrazzak's retaliation claim is barred by the "favorable termination" rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994).

Abdulrazzak disagrees and argues that defendants know this is not a habeas petition because he does not seek release from prison. Docket 100 at 4.

The Eighth Circuit has held that *Heck* applies to decisions concerning parole. *Schafer v. Moore*, 46 F.3d 43 (8th Cir. 1995). Defendants cite *Round v. Party*, 2016 WL 4123671, at *2 (S.D. Ill. Aug. 3, 2016). In *Round*, the plaintiff alleged that a member of the Illinois Prisoner Review Board "retaliated against him for threatening to take legal action by terminating his MSR [Mandatory Supervised Release]." *Round*, 2016 WL 4123671, at *2. The court, however, found that, "as a threshold matter," the plaintiff "cannot challenge the propriety of . . . the PRB ruling revoking his MSR[] by bringing a claim for money damages against Defendant Doe under § 1983." *Id.* The court continued that "a claim for damages arising from the wrongful revocation of Plaintiff's MSR is barred by *Heck* and *Edwards*." *Id.*

When a state prisoner seeks relief under 42 U.S.C. § 1983, the district court must consider whether a judgment in favor of the plaintiff would necessarily invalidate plaintiff's conviction or sentence. *Heck*, 512 U.S. at 486-87. Because that is the case here, Abdulrazzak must "show 'that his parole revocation has been overturned by either a . . . state court or a federal habeas corpus decision.' " *Freeman v. Kentucky Parole Bd.*, 2017 WL 4274172, at *2 (W.D. Ky. Sept. 26, 2017) (quoting *Norwood v. Mich. Dep't. of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003)). Although Abdulrazzak explains that he has appealed the parole board's decision to state court, it appears that no decision has been reached. Docket 100 at 20. Because Abdulrazzak cannot show that

his parole revocation has been overturned, his claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 3. Count V – Access to Documents

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). This "requires 'prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Id.* (citation omitted). To prove a violation of the right of access to the courts, a prisoner must establish that he has been injured by the violation. *Id.* at 680.

Abdulrazzak alleges that he missed a filing deadline because Werner would not allow him to access a computer and his digitally stored files. Docket 31-1. Abdulrazzak alleges that Werner "knew about my need to have access to digital information stored in CD and they kept away from me." *Id.* Abdulrazzak first alleged that the CD contained information from his original conviction for his habeas petition. *Id.* Abdulrazzak later stated that his CD contained his immigration documents. Docket 100 at 32.

Defendants argue that Abdulrazzak has not and cannot "designate specific facts showing that he suffered prejudice" as a result of his limited access. Docket 82 at 45 (citing *Cody v. Weber*, 256 F.3d 764, 770 (8th Cir. 2001). "To prove actual injury, [a prisoner] must demonstrate that a nonfrivolous legal claim has been frustrated or was being impeded." *Hartsfield*

*v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008)(alteration in original)(internal quotation omitted).

It is undisputed that Werner "offered to print off [Abdulrazzak's] paperwork so that he could continue to write out his argument for his court case." Docket 86 ¶ 66. Abdulrazzak even claims that Werner "offered to take my CD to her office." Docket 33. It is also undisputed that Werner provided Abdulrazzak two options to meet his deadlines: Abdulrazzak could complete his work by hand or Abdulrazzak could use a computer under the supervision of his lawyer. Dockets 86 ¶ 74 and 82-32. The record contains numerous examples of Werner looking for a way Abdulrazzak could use a computer. Docket 86. Those efforts only ceased when Abdulrazzak informed Werner that he was "done with his argument" and therefore "didn't need to ask about computer use again" during their July 12, 2016 meeting. Dockets 86 ¶ 85 and 82-29.

Abdulrazzak has a court-appointed attorney in his state habeas proceeding. Defendants contend that Abdulrazzak's access to his court-appointed counsel was never hindered. Courts have recognized that a prison official's obligation to assist inmate with their legal matters by providing a law library or legal assistance "is satisfied when the prisoner has been offered or provided a lawyer." *Stanko v. Patton*, 568 F. Supp. 2d 1061, 1075 (D. Neb. 2008) (citing *Kane v. Garcia Espitia*, 546 U.S. 9 (2005)). It is undisputed that there was frequent communication between Werner and Hofer about Abdulrazzak's petition. *See* Dockets 82-2, 82-19, 82-28, 82-37, 86 ¶¶ 68-72.

Thus, Abdulrazzak fails to state a legal access claim against defendants as it relates to his state habeas petition.

Defendants argue that Abdulrazzak's immigration case was frivolous as the BIA had already denied reopening his case on two prior occasions. Docket 82 at 50. Defendants allege that Abdulrazzak already "filed a timely motion to reconsider our [BIA] December 3, 2015 decision which was denied on February 9, 2016." Docket 33-7. According to the BIA, Abdulrazzak "has not demonstrated any prejudice which would warrant reopening based on an ineffective assistance claim." Docket 82-5. On April 15, 2016, the BIA re-issued their decision denying Abdulrazzak's motion to reconsider to correct a clerical mistake. *Id.*

Abdulrazzak maintains that he had a deadline for filing a new motion to reopen/reconsider with the Board of Immigration Appeals and an appeal with the Eighth Circuit. Docket 100 at 28. Abdulrazzak contends he had 90 days after the BIA re-issued a decision on April 15, 2016. Docket 100 at 31. Abdulrazzak planned to argue that the BIA failed to consider supplemental materials. *Id.* Even if this was a non-frivolous argument, Abdulrazzak fails to demonstrate that Werner's offer to print Abdulrazzak's documents and permission for him to handwrite his motion to reconsider was inadequate. As such, Abdulrazzak fails to demonstrate a violation of a constitutional right necessary to overcome qualified immunity.

### 4. Count VII – Loss of Flash Drive

"The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts." *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) (citation omitted). "[T]he destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest." *Id.*

It is undisputed that Bertsch did not work in Unit C at the time the USB drive was lost. Docket 85 ¶ 7. As previously stated, it is well established that " 'liability under section 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.' " *Armour*, 2008 WL 619381, at *1 (quoting *Madewell*, 909 F.2d at 1208)). To state a claim under § 1983, Abdulrazzak must show that Bertsch "personally violated" his constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). Abdulrazzak is unable to demonstrate that Bertsch could have been involved in the alleged loss of the USB drive. Thus, Abdulrazzak fails to demonstrate a violation of his constitutional rights necessary to overcome qualified immunity.

### B. Official Capacity

Abdulrazzak sued defendants in their official capacity. Docket 47. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations

of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.*

Here, as part of Abdulrazzak's requested remedy, he seeks to recover money damages. Docket 47 at 9. Because Abdulrazzak sued defendants in their official capacity, Abdulrazzak has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity, however, so the Eleventh Amendment acts as a bar to Abdulrazzak's monetary damage claims against the state officials acting in their official capacities.

Abdulrazzak also seeks declaratory and injunctive relief. Docket 100 at 10. Declaratory and prospective injunctive relief are available as remedies against a state officer in his or her official capacity. *Pulliam v. Allen*, 466 U.S. 522, 541 (1984). Immunities, i.e., absolute, prosecutorial or qualified immunity are not a bar "to plaintiff's action for injunctive and declaratory relief under Section 1983." *Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975).

Here, Abdulrazzak is not entitled to injunctive or declaratory relief because he has failed to demonstrate a deprivation of his constitutional rights. As discussed in the individual capacity claims section, evidence of any past wrong on the part of defendants is lacking. Because there is no constitutional wrong that can be imputed to the state, defendants are entitled to summary judgment on Abdulrazzak's official capacity claim.

## XI.  **Kaufman**

Abdulrazzak has not yet served Joshua Kaufman and asks the court to authorize service by publication. Kaufman was formerly an employee of Dakota Psychological Services and he contracted with the South Dakota Department of Corrections to provide treatment for the State's parolees and inmates. A single deliberate indifference to serious medical needs claim against Kaufman survived the initial screening. *See* Dockets 13 at 10 and 45 at 9. The court now reconsiders its prior screening order.

"[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show '(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.' " *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). Acting under the color of state law means that the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), the Supreme Court stated that "there is no single test to identify state actions and state actors . . . ." *Id.* at 294. The Court undertook a fact-intensive inquiry to determine whether a private entity acted under color of state law in a § 1983 claim. *Id.* at 298. The Court applied its analysis from

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982). In *Rendell-Baker*, the Supreme Court determined that "a private school, whose income is derived primarily from public sources and which is regulated by public authorities," did not "[act] under color of state law when it discharged certain employees." *Id.* at 831.

First, the Court in *Rendell-Baker* reasoned that actions of private contractors are not state actions "by reason of [the contractor's] significant or event total engagement in performing public contracts." *Id.* at 841. Second, the Court held that state regulation, "even if 'extensive and detailed,' " does not make a private contractor's actions state action. *Id.* Third, the Court held that a private entity is a state actor not when the entity merely performs a public function, but when "the function performed has been 'traditionally the exclusive prerogative of the State.' " *Id.* at 842 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). Fourth, the court held that there was not a "symbiotic relationship" between the government and the private school. *Id.* at 843; *see Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961).

Using the reasoning outlined in *Rendell-Baker*, Abdulrazzak has not pleaded sufficient facts to show that Kaufman acted under color of state law when he denied Abdulrazzak treatment. Abdulrazzak fails to allege any facts to suggest the State exercised any power over Kaufman's treatment decisions in carrying out the state contract. Abdulrazzak did not allege facts indicating that providing sex offender treatment is a traditional and exclusive function of the state. *See Reinhardt v. Kopcow*, 65 F. Supp. 3d 1164, 1172 (D. Colo. 2014) (sex offender treatment is not traditional and exclusive state function). Abdulrazzak

did not allege any facts suggesting a "symbiotic relationship" between the state defendants and Kaufman regarding Abdulrazzak's treatment. Thus, Abdulrazzak fails to demonstrate that Kaufman acted under the color of state law as is necessary to obtain relief under § 1983.

The United States Court of Appeals for Tenth Circuit reached the same conclusion in *Gross v. Samudio*, 630 F. App'x. 772, 778-80 (10th Cir. 2015). The Tenth Circuit held that a private sex offender treatment provider did not act under color of state law when a sex offender treatment provider refused to admit a parolee into a sex offender treatment program when the parolee challenged the program's "acceptance-of-responsibility treatment requirement." *Id.* at 775.

Because Abdulrazzak failed to state a claim under § 1983, Abdulrazzak relies on a state-law cause of action for his claim against Kaufman. Under 28 U.S.C. § 1367(c)(3), the district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." Because the § 1983 claim against the other defendants was the only claim over which this court had original jurisdiction, the court exercises its discretion and dismisses the state-law claim against Kaufman. If Abdulrazzak wants to pursue his state-law claim, he should do so in state court. Thus, Abdulrazzak's claim against Kaufman is dismissed without prejudice.

Thus, it is ORDERED:

1.    Abdulrazzak's motion for discovery (Docket 51) is denied.

2. Abdulrazzak's motion to appoint counsel (Docket 56) is denied.

3. Abdulrazzak's motion to reconsider (Docket 57) is denied.

4. The stay (Docket 71) is lifted.

5. Abdulrazzak's motion to reconsider order granting extension (Docket 59) is denied as moot.

6. Abdulrazzak's motion for discovery of plaintiff's file (Docket 60) is denied.

7. Abdulrazzak's motion for sanctions (Docket 65) is denied.

8. Abdulrazzak's motion to strike (Docket 72) is denied.

9. Abdulrazzak's motion to reconsider clerk's entry of default (Docket 92) is denied.

10. Abdulrazzak's motion for entry of default judgment (Docket 77) and motion to reconsider motion for entry of default judgment (Docket 91) are denied.

11. Abdulrazzak's motion to follow on Abdulrazzak's motion for default (Docket 109) is denied.

12. Abdulrazzak's motion for sanctions (Docket 76) is denied.

13. Abdulrazzak's motion to take judicial notice of exhibit (Dockets 104 and 105) and then his motion to amend motion to take judicial notice (Docket 108) are denied. The exhibit is filed in the record of this case.

14. Abdulrazzak's motion re service (Docket 106) is granted. Abdulrazzak may satisfy his obligation to serve copies of pleadings

upon defendants by sending a letter to defendant's counsel
identifying all documents that he files with the clerk of court.
Defense counsel will receive notice from the clerk of court when
those document have been filed.

15. Abdulrazzak's motion for service by publication (Docket 62) is
denied as moot.

16. Abdulrazzak's claim against Kaufman is dismissed without
prejudice.

17. Defendants' motion for summary judgment (Docket 81) is granted.

DATED this September 25, 2018.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE